IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA DAVID MILLS,<br><br>              Petitioner,<br><br>      vs.<br><br>MARION SPEARMAN, Warden, High Desert State Prison,[1]<br><br>              Respondent. | No. 2:15-cv-01038-JKS<br><br>MEMORANDUM DECISION |

Joshua David Mills, a state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Mills is in the custody of the California Department of Corrections and incarcerated at High Desert State Prison. Respondent has answered, and Mills has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On December 23, 2009, Mills was charged with gassing by a prisoner upon a peace officer[2] (count 1) and three counts of resisting an executive officer (counts 2 through 4). The information further alleged that Mills had sustained two prior strike convictions. On direct

---

      [1] Marion Spearman is substituted for Suzanne M. Peery as Warden, High Desert State Prison. FED. R. CIV. P. 25(d).

      [2] California Penal Code § 4501.1 "criminalizes the conduct commonly known as battery by gassing," in which (1) the defendant is confined in a state prison; (2) the defendant intentionally causes to be placed or thrown human bodily fluids or substances on the body of a peace officer or state prison employee; and (3) the bodily fluid actually makes contact with the victim's skin or a membrane. *People v. Flores*, 97 Cal. Rptr. 3d 924, 929-30 (Cal Ct. App. 2009).

appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Mills:

> On September 24, 2008, [Mills] appeared for a family law hearing in Placer County Superior Court.  At the time, he was serving a 20–year four-month prison sentence in Pelican Bay State Prison.  Deputy Preis escorted [Mills] into the courtroom and seated him at counsel table.  [Mills] was shackled in belly and leg chains.
> When the hearing started, [Mills]  began looking around the courtroom.  The bailiff on duty in the courtroom, Deputy Riggs, told [Mills] to face forward and listen to Commissioner Ross, the judicial officer presiding over the hearing.  Deputy Preis, who had been standing at the back of the courtroom, began walking towards [Mills].  When Deputy Preis got to the railing doors, Deputy Riggs placed her hand on [Mills'] left shoulder and told him he "need [ed] to face forward while sitting in the court" and not to "look around the courtroom."  [Mills] responded: "Fuck you; I'll look around where I want."  [Mills] then turned and faced the audience.
> Deputy Preis placed his hand on [Mills'] right shoulder and said, "Mr. Mills, you need to be calm and listen to what you're being told."  [Mills] responded, "Fuck both of you."  Commissioner Ross instructed [Mills] that he needed to listen to the bailiffs' directions.  In response, [Mills] said, "Fuck you too."  Commissioner Ross ordered the bailiffs to remove [Mills] from the courtroom.
> [Mills] refused to follow the bailiffs' multiple instructions to stand.  The bailiffs then lifted [Mills] onto his feet as he continued to resist.  Once standing, the bailiffs attempted to escort [Mills] out of the courtroom.  [Mills] continued to be uncooperative, unleashing a slew of profanities and trying to sit down or otherwise resist leaving the courtroom.  While the deputies were propelling [Mills] forward towards the courtroom doors, [Mills] was leaning back against the deputies resisting any forward movement.  [Mills] then spit on Deputy Riggs's cheek and in her eye.  After spitting on Deputy Riggs, the deputies took [Mills] to the ground to subdue him, and Commissioner Ross activated the panic alarm.  [Mills] continued to struggle and yell profanities while being held on the ground.  Additional officers arrived, placing a spit mask on [Mills] before escorting him from the courtroom while [Mills] continued to yell profanities, including "fuck all you bitches."
> Nearly a year later, on September 23, 2009, [Mills] appeared in court for another family law hearing before Commissioner Ross.  [Mills] was still serving his state prison sentence at Pelican Bay, and was wearing belly chains and leg shackles.  When Commissioner Ross read his ruling against [Mills], he flipped off the commissioner with both hands above counsel table.  Because Commissioner Ross did not appear to notice [Mills'] conduct, [Mills] began shaking his chains while continuing to flip off the commissioner.
> Given [Mills'] actions and his previous inappropriate courtroom behavior, Deputy Kemper told [Mills] it was time to leave the courtroom.  [Mills] responded, "Why don't you go fuck your mother."  Once the courtroom was cleared, Deputy Kemper instructed [Mills] to stand up.  [Mills] replied, "I'm not fucking going anywhere."  After

>unsuccessfully attempting to place [Mills] in a wrist lock, [Mills] told Deputy Kemper, "Don't you fucking touch me." Deputy Kemper then pulled [Mills] to the ground by tipping his chair. [Mills] was yelling while being taken to the ground. After being subdued, [Mills] was escorted out of the courtroom by additional officers without further incident.

*People v. Mills*, No. C070089, 2013 WL 6185002, at *1-2 (Cal. Ct. App. Nov. 27, 2013).

On October 12, 2011, Mills proceeded to a jury trial on the charges. At the conclusion of testimony of a prosecution witness, Mills moved for a mistrial after the witness violated a court order on Mills' pre-trial motion in limine. After hearing oral argument on the mistrial motion and considering written briefing, the court declined to declare a mistrial. On October 26, 2011, the jury found Mills guilty on counts 1 and 2 and not guilty on counts 3 and 4, but guilty of the lesser included offense of resisting arrest in relationship to those counts. The trial court also found true the two prior strike and prison prior allegations.

Mills then filed a written motion to dismiss the prior strike pursuant to *People v. Superior Court (Romero)*, 917 P.2d 628 (Cal. 1996).[3] The court denied the motion and sentenced Mills to 25 years to life imprisonment on count 1 with an additional term of one year each for two prison prior allegations. The court stayed pursuant to California Penal Code § 654[4] the 25 years to life imprisonment sentence on count 2 and imposed concurrent sentences of 365 days each for counts 3 and 4.

---

[3] Under California Penal Law § 1385, a California court may dismiss a defendant's "strike" conviction for purposes of sentencing under the state's Three Strikes law; a motion for such dismissal is referred to as a "*Romero*" motion based on the state supreme court's decision in that case. *Romero*, 917 P.2d at 632.

[4] Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." CAL. PENAL CODE § 654.

Through counsel, Mills appealed his conviction, arguing that the court erred in denying his motion for a mistrial and abused its discretion in refusing to dismiss the prior strike convictions. The Court of Appeal unanimously affirmed the conviction against Mills in a reasoned, unpublished decision issued on November 27, 2013. *Mills*, 2013 WL 6185002, at *6. Mills petitioned for review in the California Supreme Court, which was denied on February 11, 2014.

Through his trial counsel, Mills filed a petition for habeas relief in the California Supreme Court. In that petition, Mills again argued that the trial court abused its discretion in denying his mistrial motion. He also raised his *Romero* claim, but contended that a prior conviction should have been struck because that conviction was based on an invalid plea. Finally, he argued that the trial court violated his due process rights during the sentencing phase. The Supreme Court denied the petition without comment on May 12, 2015.

Mills' trial/habeas counsel then filed a timely Petition for a Writ of Habeas Corpus to this Court on May 11, 2015. *See* 28 U.S.C. § 2244(d)(1)(A). Respondent moved to dismiss the Petition as an unauthorized second or successive application for federal habeas relief. Docket No. 11. A previously-assigned magistrate judge held a hearing on the motion, after which, he issued a report and recommendation that the third claim in the Petition, challenging the constitutionality of Mills' 2002 plea conviction as the predicate for a strike, be dismissed because the underlying claim had previously been presented to this Court in case number 2:14-cv-00513-WBS-DAD. Docket No. 16. A previously-assigned district court judge adopted the findings and recommendations in full. Docket No. 23. The remaining claims have now been fully briefed and are before the undersigned judge for adjudication.

II. GROUNDS RAISED

In his counseled Petition before this Court, Mills now argues that the trial court erred by: 1) denying his mistrial motion; 2) denying his *Romero* motion; and 3) failing to consider his *Romero* motion.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

Ground 1.    <u>Denial of Mistrial Motion</u>

Mills first argues that the witness's violation of the trial court's ruling "irreparably damaged" his chance of receiving a fair trial. The Court of Appeal laid out the following facts underlying this claim:

> Prior to trial, [Mills] moved to prohibit any testimony that he was serving a prison sentence at Pelican Bay. According to [Mills], the very mention of Pelican Bay was inflammatory based on the public's purported perception of the prison as a "gladiatorial" institution that housed the "worst of the worst." The court ordered the parties and their witnesses not to refer to Pelican Bay during trial. Because [Mills'] status as a prisoner was an element of the gassing charge (§ 4501.1, subd. (a)), and his incarceration at a high level security prison was relevant to the reasonableness of the force used by the deputies, the court ruled the parties could testify to [Mills] serving time in a "maximum security prison." Based on the court's ruling, the prosecution explicitly instructed its witnesses not to mention the term Pelican Bay.
> Deputy Kemper testified to the September 2009 courtroom events. The prosecutor asked Deputy Kemper whether, in September 2009, he was aware [Mills] was serving a sentence from a maximum security prison. Deputy Kemper responded, "I believe it was Pelican Bay, yes." Defense counsel immediately interjected, "Your Honor—" and before counsel could fully object the trial court struck Deputy Kemper's answer from the record stating, "Yeah. I'll just strike that from the record, and we will deal with that in a little bit." That was the only time Pelican Bay was mentioned in the jury's presence during the entire six day trial.
> [Mills] moved for a mistrial based on the Pelican Bay reference, which the court set for hearing the following day. Deputy Kemper was recalled as a witness outside the jury's presence and testified he had received the prosecutor's admonition not to mention Pelican Bay but that he had done so accidentally.
> At the hearing on [Mills'] mistrial motion, defense counsel claimed several jurors looked at [Mills] and one continued to stare at him after Deputy Kemper mentioned Pelican Bay. [Mills] argued the isolated reference to Pelican Bay caused irreparable damage that could not be cured by an instruction from the court. After considering the briefs and arguments of both counsel, the trial court denied the motion finding [Mills] had not been precluded from receiving a fair trial from a single reference to Pelican Bay. The court considered giving a specific curative instruction but ultimately elected not to refer to Pelican Bay further. The court later admonished the jury to disregard all stricken testimony.

*Mills*, 2013 WL 6185002, at *2-3.

-7-

As a general rule, the drastic remedy of a mistrial should not be granted where the prejudice from improperly admitted evidence is not substantial and where curative instructions can mitigate the harm. *See, e.g.*, *United States v. Browne*, 829 F.2d 760, 766 (9th Cir. 1987). Under California law, a trial court has broad discretion to grant a mistrial. *See People v. Williams*, 148 P.3d 47, 72 (Cal. 2007).

As an initial matter, to the extent that Mills is alleging a violation of state law in the denial of his mistrial motion, his claim is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68. But to the extent that he is alleging a federal due process violation from the denial of his mistrial motion, he has raised a cognizable federal claim. In order to establish a due process violation from an alleged error such as the denial of a mistrial motion, a habeas petitioner must show that the error resulted in a trial that was fundamentally unfair. *See id.* at 70-71, 75; *Hayes v. Ayers*, 632 F.3d 500, 515 (9th Cir. 2011). The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly. *See Estelle*, 502 U.S. at 73.

Here, the denial of Mills' motion for mistrial, based on Deputy Kemper's disclosure that Mills was housed at Pelican Bay State Prison, did not render Mills' trial fundamentally unfair. First, the testimony itself was isolated and nondescript, and it was not so inflammatory that it would render the jury unable to fairly consider the evidence. *See United States v. Allen*, 425 F.3d 1231, 1236 (9th Cir. 2005) (mistrial was not warranted based on witness's isolated reference to defendant's prior incarceration); *United States v. Yarbrough*, 852 F.2d 1522, 1540 (9th Cir. 1988) ("[I]solated references to [defendant's] prior prison record did not warrant a mistrial."); *see also United States v. Zitt*, 714 F.3d 511, 514 (7th Cir. 2013) (a "brief and

nondescript" reference to a defendant's criminal history would not prevent the jury from fairly evaluating the evidence). Importantly, "this one stray remark was not highlighted in any way before the jury." *United States v. Crawford*, 61 F. App'x 325, 326 (9th Cir. 2003).

Likewise, as the Court of Appeal concluded, it is unlikely that the jury attributed "significance to the fleeting comment." *Mills*, 2013 WL 6185002, at *3. Here, the record indicates that the jury was repeatedly told that Mills was incarcerated at a maximum security prison in order to prove the elements of the gassing offense. As the state courts reasoned:

> [I]t cannot be assumed that the jurors possessed any particularized knowledge about Pelican Bay or the individuals incarcerated there. [Mills'] assumption that the jurors knew the prison housed the "worst of the worst" is nothing more than sheer speculation—especially since none of the witnesses ever testified that Pelican Bay had a reputation for housing the "worst of the worst."
> . . . .
> Although [Mills] claims some jurors stared at him after the comment, it is reasonable to assume the jurors' attention was drawn to counsel table, where [Mills] was seated, after his counsel interjected, "Your Honor—" immediately after the words Pelican Bay were spoken. Turning one's attention to someone who is speaking is logical and does not evidence irreparable prejudice.

*Id.*

Moreover, the trial court took appropriate corrective action. As soon as the statement was made, the trial court struck the testimony. The trial court later instructed the jury to disregard any testimony that was stricken. It is presumed that the jurors followed the trial court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (a jury is presumed to have followed the instructions given to them); *see also Hayes*, 632 F.3d at 515 (finding no due process violation from denial of mistrial based on witness's testimony that petitioner had hired someone to murder her, where the trial court sustained an objection and ordered the jury to disregard it). The court ultimately declined to give additional curative instructions about the

officer's improper testimony for fear of highlighting what was said, which was a logical concern, particularly given the fleeting nature of the comment.

Finally, as the Court of Appeal concluded, substantial independent evidence exists to support the jury's verdict. *See Mills*, 2013 WL 6185002, at *4 ("Given the elements of the gassing offense, and the overwhelming evidence that [Mills] was serving his sentence at a maximum security prison, this case is not "extremely close."). It is therefore not likely that the improper statement affected the verdict. *See United States v. Aichele*, 941 F.2d 761, 765 (9th Cir. 1991) (holding, in case affirming the denial of a mistrial where testimony concerning a defendant's prior incarceration was erroneously introduced, that, "[i]f the case against a defendant is very strong, though not overwhelming, and the reviewing court is unconvinced that the admission of the evidence influenced the outcome of the case, the court may uphold the verdict."). Indeed, as the appellate court noted, "the jury refused to convict [Mills] of two felony resisting an executive officer charges, and instead found [Mills] guilty of the lesser included offenses of resisting a peace officer. Had the jurors decided the case solely on the reputation of Pelican Bay, as [Mills] argues, it is unlikely they would have rejected the greater offenses." *Mills*, 2013 WL 6185002, at *3. Accordingly, Mills is not entitled to relief on this claim.

Ground 2.    Denial of *Romero* Motion

Mills next contends that the trial court abused its discretion in refusing to strike one of the prior strike convictions at sentencing. Under § 1385, a California court may dismiss a defendant's "strike" conviction for purposes of sentencing under the state's Three Strikes law; such dismissal is referred to as a "*Romero*" motion based on the state supreme court's decision in that case. *Romero*, 917 P.2d at 632.

The thrust of this claim is that the trial court erroneously failed to exercise its discretion to strike one of his prior serious felony convictions when imposing his sentence. Such claim, however, presents only a state law sentencing error that is not cognizable on federal habeas review. *See Souch v. Schiavo*, 289 F.3d 616 (9th Cir.2002) (claim challenging state court's discretionary decision concerning application of state sentencing law presented only state law issues and thus was not cognizable in a proceeding pursuant to 28 U.S.C. § 2254); *see also Swarthout*, 131 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68. Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.[5] Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not. *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is not even whether it was an abuse of discretion for her to have done so–the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law."" (quoting § 2254(d)(1))).

---

[5] At one time, the Ninth Circuit viewed a state court ruling to be "objectively unreasonable" if it amounted to a clear error. *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir. 2000). This is the test the Ninth Circuit uses in reviewing a trial court decision under the abuse of discretion standard. *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc). The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as inappropriate under the AEDPA. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (clear error standard is insufficiently deferential to state courts).

Even assuming that Mills is correct that the trial court misapplied California law when denying his motion, absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing law does not warrant habeas relief. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *see also Miller v. Vasquez*, 868 F.2d 1116 (9th Cir. 1989) (declining to examine state court's determination that habeas petitioner's prior conviction was for a "serious felony" under state sentencing regime). Federal courts are "bound by a state court's construction of its own penal statutes," *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993), and this Court therefore must defer to the California courts' application of the state's three strikes law unless that interpretation is "untenable or amounts to a subterfuge to avoid federal habeas review of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989). Mills does not allege that the state court's application of the Three Strikes law was either untenable or done to avoid federal review of his sentence. Nor has he shown that the trial court's *Romero* decision was arbitrary, capricious, or fundamentally unfair in violation of federal due process. *See Christian*, 41 F.3d at 469.

Although Mills does not argue that his sentence was cruel and unusual, it is worth noting that his sentence was steep. Counsel for Mills characterizes it as "27 years to life for spitting on a cop." But in any event, it does not appear that Mills' sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment. The Eighth Amendment, applicable to the States through the Fourteenth Amendment, proscribes the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII; *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008). The Supreme Court has held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality

principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citation omitted). In determining whether to infer gross disproportionality, a federal court should examine whether a petitioner's sentence is justified by the gravity of his triggering offense and his criminal history, a process similar to the three-pronged approach employed by California state courts. *See Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).

Here, the California Supreme Court upheld Mills' sentence of 22 years to life imprisonment where he was convicted of gassing on a peace officer and was also a repeat offender. Mills cannot demonstrate that his is one of the exceedingly rare cases in which the sentence imposed raises an inference of gross disproportionality when compared to the crime committed. *See, e.g.*, *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (sentence of 25 years to life for grand theft of $1,200 of golf clubs was not cruel and unusual); *Lockyer*, 538 U.S. at 77 (two consecutive sentences of 25 years to life for petty theft was not cruel and unusual). The California Supreme Court's affirmance of Mills' sentence was therefore not "contrary to, or . . . an unreasonable application of," the gross disproportionality principle, the contours of which are unclear. *Lockyer*, 538 U.S. at 72-73.

Ground 4.     Consideration of *Romero* Motion

Finally, Mills alleges that he was denied his fair trial because it was "apparent" that the sentencing judge had already determined the sentence she would impose prior to the *Romero* hearing and therefore did not actually consider the *Romero* motion. In support of this claim, Mills submits the declaration of his trial counsel, who now represents him in this proceeding, which states that, prior to the start of the hearing, counsel saw the judge's clerk filling out the

minute order with the sentence that was ultimately imposed. According to counsel, it is "obvious" that the judge told her clerk "ahead of time how she was going to sentence Mr. Mills. This made a complete mockery of the Romero motion since [the judge] already had her mind made up before the hearing on the Romero motion even started." In further support of the claim, Mills states that he was not allowed to offer statements of his family members at the sentencing hearing.

But these contentions are woefully insufficient to support a finding that the court did not consider everything before it and instead predetermined his sentence. Indeed, the record suggests otherwise. The court allowed and considered expert testimony regarding Mills' seizure disorder, and explained that Mills was precluded from offering his family members' testimony because he had failed to provide adequate notice. Mills' claim to the contrary is pure speculation that does not warrant habeas relief. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (granting habeas relief "on the basis of little more than speculation with slight support" is improper).

## V. CONCLUSION AND ORDER

Mills is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 27, 2016.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge